UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HOWARD MAYFIELD,

    Petitioner,

v.

    Case No. 1:05-CV-305
    (Criminal Case No. 1:04:CR:16)

UNITED STATES OF AMERICA,

    HON. GORDON J. QUIST

    Respondent.
_____/

## OPINION

This Court has before it Howard Mayfield's ("Petitioner") Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. For the following reasons, Petitioner's motion will be denied.

**I.     Procedural History**

On March 22, 2004, Petitioner pled guilty to two counts of possession with intent to distribute 5 grams or more of crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii). On July 27, 2004, this Court sentenced Petitioner to 194 months incarceration. Petitioner did not object to the Presentence Report ("PSR") or to the sentence itself at the hearing. Judgment was entered on July 28, 2004. Petitioner did not file an appeal with the Court of Appeals for the Sixth Circuit. On April 25, 2005, Petitioner filed his motion under 28 U.S.C. § 2255. The motion is timely.

In his § 2255 motion, Petitioner raises two claims. First, he claims that he was sentenced in violation of *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2004), and *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005) because his sentence was calculated based on a quantity of between 500 grams and 1.5 kilograms of crack cocaine. Second, he claims that his counsel was

ineffective because he failed to file an appeal. In his motion, Petitioner alleges that the sole grounds for an appeal would have been a *Blakely, Booker* violation at sentencing. In his affidavit, he states, "After the sentencing hearing I informed my attorney that I wanted to appeal the erroneous enhanced sentence as being unconstitutional. The Supreme Court had already ruled in the case of Blakely v. Washington and I believed the court was in error by sentencing me for a drug quantity that I had not admitted in the plea agreement." (Mayfield Aff. ¶ 9.)

## II.   Discussion

### 1.   Most Claims are Procedurally Defaulted

Petitioner had the opportunity to raise all of his claims on direct appeal, but did not do so. Therefore, all of his claims, except that of ineffective assistance of counsel, are procedurally defaulted. As the Supreme Court has said, § 2255 petitions are not substitutes for direct appeals. *See Reed v. Farley*, 512 U.S. 339, 354, 114 S. Ct. 2291, 2300 (1994); *United States v. Frady*, 456 U.S. 152, 165, 102 S. Ct. 1584, 1593 (1982); *Hunter v. United States*, 160 F.3d 1109, 1114 (6th Cir. 1998). The Supreme Court has imposed strict limitations upon the circumstances under which a guilty plea may be attacked on collateral review. *See Bousley v. United States*, 523 U.S. 614, 620, 118 S. Ct. 1604, 1610 (1998); *Mabry v. Johnson*, 467 U.S. 504, 508, 104 S. Ct. 2543, 2546-47 (1984). Because Petitioner failed to challenge the validity of his plea and his other claims on direct appeal, his claims are procedurally defaulted. *See Bousley*, 523 U.S. at 622, 118 S. Ct. at 1611; *Hampton v. United States*, 191 F.3d 695, 698 (6th Cir. 1999). As such, Petitioner is barred from raising his claims in a § 2255 motion unless he can demonstrate "cause" and "actual prejudice" existed to excuse his failure to raise the issues on direct appeal, or that a constitutional error at the plea proceedings "has probably resulted in the conviction of one who is actually innocent." *See Bousley*, 523 U.S. at 622, 118 S. Ct. at 1611 (citing *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.

2

Ct. 2639, 2645 (1986)); *Hampton*, 191 F.3d at 698-99. To show cause, Petitioner must point to "some objective factor external to the defense" that prohibited him from raising his claims on direct appeal. *See Murray*, 477 U.S. at 488, 106 S. Ct. at 2645. To show prejudice, he must demonstrate an error that worked to his actual and substantial disadvantage. *See Frady*, 456 U.S. at 170, 102 S. Ct. at 1595-96.

Petitioner cannot show prejudice because the issues he raises are without merit. In order to prevail on his § 2255 motion, Petitioner "must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea. . . ." *Schledwitz v. United States*, 169 F.3d 1003, 1011 (6th Cir. 1999) (citing *Brecht v. Abramson*, 507 U.S. 619, 637, 113 S. Ct. 1710, 1721 (1993)); *see also Wright v. United States*, 182 F.3d 458, 463 (6th Cir. 1999). Petitioner has not met this burden.

### 2.     *Blakely* and *Booker* Claim

Petitioner claims that his Sixth Amendment rights were violated under *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2004), and *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005) because his sentence was calculated based on a quantity of between 500 grams and 1.5 kilograms of crack cocaine. In *Blakely*, the Supreme Court held that a Washington state trial judge's enhancement of a defendant's sentence based on the judge's finding of deliberate cruelty violated the defendant's Sixth Amendment right to a trial by jury. The decision called into question the constitutionality of both Washington state's sentencing guidelines and the federal sentencing guidelines. In *Booker*, the Supreme Court addressed whether the federal sentencing guidelines and enhancement provisions violate a defendant's Sixth Amendment rights. The Supreme Court concluded that the mandatory federal sentencing guidelines are subject to the jury trial requirements of the Sixth Amendment. However, the application of the federal guidelines does

3

not violate a defendant's constitutional rights so long as the guidelines are advisory rather than mandatory.

There are three problems with Petitioner's *Blakely*, *Booker* claim. First, Petitioner's claim fails because the Court explicitly advised Petitioner that the Sentencing Guidelines were only guidelines, and were not mandatory. *See United States v. Barnett*, 398 F.3d 516, 528-29 (6th Cir. 2005), *cert. dismissed*, 126 S. Ct. 33 (2005). At the sentencing hearing, the Court stated:

> Before we go forward, let me tell you how I have been handling the fallout of the Blakely case, Blakely against Washington. . . . I have been treating the guidelines essentially as guidelines; in other words, instead of rules that must be applied, guidelines to help channel the discretion that I would have in sentencing between the minimum and the maximum sentence provided by statute. I do that because I think there is some efficacy in having some kind of consistency throughout the federal judiciary. And, in addition to that, a substantial amount of time went into determining what the guideline ranges should be, not that they're necessarily binding.

(Sentencing Tr. at 3.) Because the Court treated the Sentencing Guidelines as advisory rather than mandatory, *Blakely* and *Booker* were not implicated.

Second, Petitioner's claim fails because he admitted to the quantity of drugs at sentencing, and the Court did not make an independent finding of quantity. *See Booker*, 125 S. Ct. at 756 ("Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.")*; see also United States v. Stafford*, 258 F.3d 465, 476-77 (6th Cir. 2001); *United States v. Clements*, 142 Fed. Appx. 223, 230 (6th Cir. June 22, 2005) (unpublished). At sentencing, the following conversation occurred:

> THE COURT: All right. In this case, do you have any objection to the guideline calculations, Ms. Meyer?
>
> MS. MEYER: Well, Your Honor, the defendant is prepared to make an admission as to the drug quantity, which would place him at a Level 36 –

THE COURT:           Okay.

MS. MEYER:           – to obviate a Blakely issue.

THE COURT:           Mr. Kaczor?

MR. KACZOR:          That's correct, Your Honor. I had prepared an objection to the quantity when the presentence report came out. It was a pre-Blakely presentence report, so I guess we would call it a pre-Blakely objection to the quantity. In trying to resolve that issue with Ms. Hodel and with the Assistant United States Attorney Meyer, we've arrived at a stipulation. And I've explained the ramifications of Blakely and other stipulations to Mr. Mayfield, and he is prepared to agree that he was involved with at least 500 grams of crack cocaine, therefore placing his base offense level, pursuant to guidelines – although I understand that they're advisory – at Level 36, Your Honor.

THE COURT:           All right.

                     Now, Mr. Mayfield, you've heard what your lawyer has said. And the guideline for Level 36 is at least 500 grams but less than 1.5 kilograms of cocaine base. So are you telling me that you dealt with at least 500 grams but less than 1.5 kilograms of crack cocaine?

THE DEFENDANT: Yes.

THE COURT:           All right. Has anyone forced you to say that in any respect?

THE DEFENDANT: No.

THE COURT:           All right. So that takes care of that problem, then. So we start out at Level 36.

                     Were there any objections to anything in the report, Ms. Meyer, other than–

MS. MEYER:           No, Your Honor.

THE COURT:           Mr. Kaczor, other than the quantity?

MR. KACZOR:          No, Your Honor.

THE COURT:           Now, you discussed the report with Mr. Mayfield, have you?

5

> MR. KACZOR: Yes, I have, Your Honor.
>
> THE COURT: And, Mr. Mayfield, have you read the report?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you have any objection to anything in that report, sir?
>
> THE DEFENDANT: No.

(Sentencing Tr. at 5-6.) Therefore, because Defendant admitted to the quantity of drugs and had no other objection, there was no violation of the Sixth Amendment as explained in *Blakely* and *Booker*. In addition, where a defendant does not object to factual statements in the PSR, he is deemed to have admitted the facts in the report. *See United States v. Adkins*, ___ F.3d ___, No. 04-5474, 2005 WL 3116582 (6th Cir. Nov. 23, 2005).

Third, Petitioner's claim fails because the Sixth Circuit has explicitly held that the new procedural rules set forth in *Blakely* and *Booker* do not apply retroactively to cases on collateral review under § 2255. *See Humphress v. United States,* 398 F.3d 855, 860-863 (6th Cir. 2005), *cert. denied*, 126 S. Ct. 199 (2005). In *Humphress*, the district court had enhanced the petitioner's sentence by nine points based on factual findings, at least some of which had not been found by the jury. The petitioner filed a § 2255 motion, claiming that the enhanced sentence violated *Blakely*. Because *Booker* was decided after the petitioner had filed his motion, the Sixth Circuit also considered *Booker* in its analysis. It concluded that, although *Booker* and *Blakely* were "new rules" of criminal procedure, they did not meet the criteria required to be applied retroactively to cases on collateral review set forth by the Supreme Court in *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060 (1989). Specifically, the new rules do not forbid punishment of certain primary conduct or prohibit a certain category of punishment for a class of defendants because of their status or offense. *See Humphress*, 398 F.3d at 860-863. Furthermore, they are not "watershed rules" that implicate the

6

fundamental fairness and accuracy of the criminal proceeding. *See id.* Accordingly, Petitioner's claim must fail.

### 3. Ineffective Assistance of Counsel Claim

The procedural default rule does not apply with regard to claims of ineffective assistance of counsel. Claims of ineffective assistance of trial counsel are generally not reviewable on direct appeal, because the record may be inadequate to permit review. *See United States v. Kincaide*, 145 F.3d 771, 785 (6th Cir. 1998); *United States v. Tucker*, 90 F.3d 1135, 1143 (6th Cir. 1996). Consequently, such claims may be raised for the first time in a § 2255 proceeding, without regard to a failure to raise them on direct appeal. *See Tucker*, 90 F.3d at 1143; *United States v. Allison*, 59 F.3d 43, 47 (6th Cir. 1995).

Here, Petitioner claims that his counsel was ineffective for failing to file an appeal with the Court of Appeals for the Sixth Circuit. In *Regalado v. U.S.*, 334 F.3d 520, 524-25 (6th Cir. 2003), the Court of Appeals for the Sixth Circuit restated the test for determining whether counsel was ineffective for failing to file an appeal.

> *Roe v. Flores-Ortega*, 528 U.S. 470, 120, S.Ct. 1029, 145 L.Ed.2d 985 (2000), announced that the test for assessing ineffective assistance of counsel for failure to file a notice of appeal is the familiar two-pronged inquiry of *Strickland v. Washington,* 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed. 674 (1984). *See Roe*, 528 U.S. at 477, 120 S.Ct. 1029. The inquiry requires that a court first ask whether the trial counsel's performance fell below the reasonably accepted professional standard. Put another way, the court must assess whether "counsel's performance was constitutionally deficient such that he was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Magana v. Hofbauer*, 263 F.3d 542, 547 (6th Cir.2001). In assessing the attorney's conduct under *Strickland*'s first prong, the Supreme Court said that "courts must 'judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct,' and 'judicial scrutiny of counsel's performance must be highly deferential.'" *Roe*, 528 U.S. at 477, 120 S.Ct. 1029 (citations omitted). The second component of the *Strickland* inquiry requires the court to determine whether the "counsel's deficient performance prejudiced the defendant." *Id.* To establish this prejudice, the petitioner must "demonstrat[e] that there is a reasonable probability

7

that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Magana*, 263 F.3d at 547 (quoting *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052).

\* \* \* \*

The Court . . . state[d] that it is "professionally unreasonable" for a lawyer to fail to file an appeal when specifically instructed to do so. *Roe*, 528 U.S. at 477. . . . Nevertheless, the *Roe* Court rejected a per se rule that an attorney must always file an appeal unless specifically told otherwise, and determined that when the client has neither told his attorney to file an appeal nor told her not to file an appeal, courts must evaluate the attorney's performance by asking whether the attorney "consulted" with the defendant about the benefits and drawbacks of bringing an appeal. *Id.* at 478, 120 S.Ct. 1029. Consultation occurs when the attorney "advis[es] the defendant about the advantages and disadvantages of taking an appeal, and mak[es] a reasonable effort to discover the defendant's wishes." *Id.* If consultation has occurred, then "[c]ounsel performs in a professionally unreasonable manner only by failing to follow the defendant's *express instructions* with respect to an appeal." *Id.* (emphasis added). If, on the other hand, the counsel failed to consult with her client, then the court must address whether the failure to consult, by itself, is indicative of deficient performance. *See id.*

*Regalado*, 334 F.3d at 524-25.

The Court finds that Petitioner's counsel was not deficient under the first *Strickland* prong. Here, there is a dispute over whether Petitioner explicitly requested that his counsel file an appeal. In his affidavit, attorney David Kaczor states:

13. That on the day of sentencing, Mr. Mayfield withdrew all his objections, including the objection to the base offense level. At sentencing, AUSA Meyer made a motion for downward departure, and Mr. Mayfield was sentenced to 194 months in prison despite the fact that the guideline range was 292 to 365 months. For his cooperation, Mr. Mayfield received a reduction of nearly 100 months.

14. That neither Mr. Mayfield nor Ms. Reister ever contacted me requesting that I file an appeal. Given the fact that Mr. Mayfield had withdrawn his objections to the PSR and had received a sentence 98 months lower than the guideline range, there remained no issues upon which an appeal could be based. Additionally, as Mr. Mayfield was going to continue to cooperate in the hopes of receiving a Rule 35 sentence reduction, it made no sense to file an appeal and jeopardize his continued cooperation with the government as well as his 98 month departure from the guidelines.

15. That on October 18, 2004, nearly ninety (90) days after his sentencing, Mr. Mayfield filed a request for investigation with the State of Michigan

8

>   Grievance Commission.  Mr. Mayfield filled three (3) pages of facts upon which he based his grievance, but he did not allege that either he or Ms. Reister had requested I file an appeal and that I failed to do so.

(Kaczor Aff. ¶¶ 13-15.)

However, in his affidavit, Petitioner claims that he requested an appeal.

>   7.  During my sentencing hearing on July 28, 2004, the Court erroneously agreed with the quantity of drugs stated in the PSI report, and imposed a term of imprisonment contrary to the law.  Had I known that I would be sentenced to a term of imprisonment for drugs that I did not admit to in the plea agreement, I would have exercised my right under the Sixth Amendment to a jury trial and forced the government to prove its case against me.
>
>   8.  The sentence the Court imposed in my case is constitutional [sic] invalid because I did not plead guilty with the understanding that I would be sentenced based on facts other than what I pled guilty to.
>
>   9.  After the sentencing hearing I informed my attorney that I wanted to appeal the erroneous enhanced sentence as being unconstitutional.  The Supreme Court had already ruled in the case of Blakely v. Washington and I believed the court was in error by sentencing me for a drug quantity that I had not admitted to in the plea agreement.  Ms. Reister also called Mr. Koczor [sic] and discussed with him the appeal and of returning part of the $10,000.00 he did not earn, since the Court had appointed him to represent me.  Mr. Koczor [sic] failed to file a notice of appeal, thereby depriving me of my right to appellate review of my sentence.  I believe that I had a right to an appeal.  I believe had Mr. Koczor [sic] appealed my case the Sixth Circuit would have reversed the judgment and remanded my case back to the district court for resentencing. . . .

(Mayfield Aff. ¶¶ 7-9.)

Paragraphs 7 and 8 of Petitioner's Affidavit are clearly false given his statements at the sentencing hearing in which Petitioner admitted to dealing at least 500 grams but less than 1.5 kilograms of crack cocaine.  (Sentencing Tr. at 5-6.)  Therefore, the Court finds Petitioner's affidavit to be incredible and relies on Kaczor's affidavit to find that Petitioner did not explicitly request his counsel to file an appeal.  *See Cummings v. United States*, 84 Fed. Appx. 603, 605 (6th

9

Cir. Dec. 15, 2003) (unpublished) (holding that "district court did not commit clear error by crediting counsel's affidavit, insofar as it indicated that Cummings had not asked him to file an appeal").

If no appeal was specifically requested, the next step under *Regalado* is to determine whether counsel consulted with his client about a possible appeal. *Regalado*, 334 F.3d at 525. In this situation, it is unclear from the affidavits whether a consultation occurred. But even if the Court were to find that no consultation occurred, the "court must address whether the failure to consult, by itself, is indicative of deficient performance." *Id*. Counsel has a duty to consult with the defendant about an appeal when there is reason to think either that (1) a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) this particular defendant reasonably demonstrated to counsel that he was interested in appealing. *See Roe*, 528 U.S. at 480, 120 S. Ct. at 1029. Here, the Court finds that counsel would not have been deficient in failing to consult for several reasons. First, there was no meritorious issue to appeal. Petitioner withdrew all of his objections to the PSR on the day of sentencing. (Kaczor Aff. ¶ 13.) Second, because of his cooperation in the prosecution of others, the Government moved for a downward departure and Petitioner received a reduction in sentence of nearly 100 months pursuant to U.S.S.G. § 5K1.1. (*Id.*) It was in Petitioner's best interest to continue to cooperate with the Government because the Government was considering filing a Rule 35 sentence reduction. (*Id.* ¶ 14.). Filing an appeal may have jeopardized the filing of the Rule 35 motion.

Furthermore, under the second *Strickland* prong, Petitioner was not prejudiced by his counsel's conduct. Petitioner has not demonstrated that, but for his counsel's conduct, he would have filed an appeal. *See Roe*, 528 U.S. at 486, 120 S. Ct. at 1040. First, as explained earlier, it was in Petitioner's best interest to continue to cooperate with the government, particularly after he

10

received a sentence reduction of almost 100 months. Second, it is unlikely that Petitioner would have sought an appeal because he had no meritorious claims under *Blakely* or *Booker*. *See id.* (the court may consider whether the claims have merit in determining whether it is likely that the Petitioner would have filed an appeal). He admitted to the quantity of drugs and was sentenced at the proper level. Also, the Court explicitly told Petitioner that the guidelines were only advisory and were not mandatory. Therefore, there would have been no justification for resentencing under *Blakely* or *Booker*. *See Barnett*, 398 F.3d at 528-29; *Stafford*, 258 F.3d at 476-77. Third, because Petitioner failed to object to the PSR and did not object to his sentence at the sentencing hearing, there was nothing to appeal. *See United States v. Ukomadu*, 236 F.3d 333, 340 (6th Cir. 2001) ("A defendant waives the right to appeal an application of the Sentencing Guidelines when he fails to object in the trial court.").

As shown by the record quoted on page 6 of this Opinion, Petitioner, himself, said that he had no objection to anything in the PSR. This was not just his lawyer's decision. A sentencing court should be able to rely upon a defendant's statements at the time of plea and sentence. Any other rule would permit a person such as this Petitioner to continue his pattern of lies and misleading statements so that he could never be pinned down as to the truth, i.e., "If this doesn't work, I'll try another lie." In this case, the truth is that this Petitioner told this Court that he dealt in 500 to 1500 grams of cocaine and that he had no (other) objection to the PSR. Finally, the fact that Petitioner did not raise the appeal issue in his grievance against Mr. Kaczor suggests that he would not have filed an appeal. (Kaczor Aff. ¶ 15.)

Because counsel's conduct was not deficient, and because Petitioner suffered no prejudice, Petitioner's claim for ineffective assistance of counsel must fail.

11

**III. No Certificate of Appealability**.

Under 28 U.S.C. § 2253(c)(2), the Court must also determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473, 120 S. Ct. 1595 (2000). *See id.* Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, 120 S. Ct. at 1604, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." For the reasons stated above, the Court finds that reasonable jurists could not find that this Court's dismissal of each of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

## Conclusion

For these reasons, Petitioner's § 2255 Motion (docket no. 1) will be DISMISSED WITH PREJUDICE. In addition, a certificate of appealability will be DENIED as to each issue raised by Petitioner because he has failed to make a "substantial showing of a denial of a constitutional right."

A separate order will issue.

Dated: December 15, 2005                    /s/ Gordon J. Quist
                                            GORDON J. QUIST
                                            UNITED STATES DISTRICT JUDGE